DA 08-0238

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 436

THE CITY OF WHITEFISH,
a Municipal Corporation,

        Plaintiff and Appellant,

   v.

BOARD OF COUNTY COMMISSIONERS OF
FLATHEAD COUNTY, the governing body of the
County of Flathead, acting by and through Joseph D.
Brenneman, Gary D. Hall, and Dale W. Lauman,

        Respondents and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DV-2008-367(A)
                 Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                John M. Phelps, City Attorney, Whitefish, Montana

                Terry N. Trieweiler, Trieweiler Law Firm, Whitefish, Montana

        For Appellee:

                Alan F. McCormick, Garlington, Lohn & Robinson, PLLP,
                Missoula, Montana

Submitted on Briefs:  November 13, 2008

Decided:  December 23, 2008

Filed:

_____
                           Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The City of Whitefish (City) and the Board of Commissioners for Flathead County (County) entered into an Interlocal Agreement (Agreement) in February 2005. This Agreement memorialized many cooperative planning practices in which the parties had engaged for several decades. It also altered some of these traditional practices and boundaries. In 2008, the County issued a resolution that, among other things, unilaterally rescinded the County's consent to the Agreement in violation of the express terms of the Agreement. The City filed a complaint against the County seeking various forms of relief as well as a preliminary injunction. The Eleventh Judicial District Court denied the injunction and ruled that the Interlocal Agreement was invalid. The City appeals. We reverse and remand.

## ISSUE

¶2 The dispositive issue on appeal is whether the District Court erred in denying the City's request for a preliminary injunction and by ruling on the underlying legal issue of the case.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 1967, the City and County jointly created the Whitefish City-County Planning Board (Board). The Board enjoyed a planning jurisdictional area of four and one-half miles around the City. Additionally, from 1967 to 2005, the City of Whitefish, in accordance with applicable law and with the consent of Flathead County, zoned the perimeter of land circling the City and extending one mile outside of the City limits. This

2

area was called the City's extra-territorial zoning jurisdiction. These jurisdictional areas were created without the execution of a formal interlocal agreement.

¶4    In February 2005, after two years of negotiation, the City and County entered into a formal interlocal agreement. Among other things, the Agreement reduced the jurisdiction of the Board to two miles outside of the Whitefish city limits. The Agreement also provided that within these two miles, the City would have sole zoning authority and sole authority to establish and enforce subdivision, floodplain and lakeshore protection regulations, as well as complete authority to adopt and amend a growth policy. Critically, the Agreement required the mutual written agreement of both parties before it could be altered, amended, or terminated. After executing the Agreement, the parties executed two written amendments.

¶5    The City asserts that, as a result of the Agreement, it substantially increased its staff, entered into a five-year lease for office space, adopted a new growth policy, annexed Whitefish Lake, zoned hundreds of acres of property, and was processing numerous development and protection applications at the time this dispute arose. In March 2008, the City adopted a "Critical Areas Ordinance" governing the extra-territorial area. The County objected, claiming that the Ordinance adversely impacted many County residents within the City's extra-territorial jurisdiction and that the Ordinance constituted a violation of "the spirit of the Interlocal Agreement." The County, accordingly, adopted a resolution criticizing the Ordinance and unilaterally rescinding its consent to the Agreement.

¶6    The City immediately filed the underlying action alleging the County had violated the express termination provisions of the Agreement, thereby breaching the Agreement. The City sought a temporary restraining order and preliminary injunction, restraining the County from taking any action to interfere with the City's jurisdiction of the two-mile area, and seeking a declaration that the Agreement remains in effect, and that the Resolution rescinding it is void. The County responded that it was justified in its action and argued that the mutual termination provisions of the Agreement were invalid because they were contrary to the enabling authority of interlocal agreements and the provisions of §§ 76-2-310 and -311, MCA. In May 2008, the District Court ruled in favor of the County, denied the City's request for a preliminary injunction, and determined the Agreement was invalid. The City appeals.

## STANDARD OF REVIEW

¶7    While we typically review the grant or denial of a temporary or permanent injunction under the "manifest abuse of discretion" standard (*St. James Healthcare v. Cole*, 2008 MT 44, ¶ 21, 341 Mont. 368, ¶ 21, 178 P.3d 696, ¶ 21), this deferential standard is inapplicable where, as here, the grant or denial of the injunction is based solely upon conclusions of law. In such a case, no discretion is involved and we review the district court's conclusions of law to determine whether the interpretation of the law is correct. *St. James Healthcare* ¶ 21. *See also M.H. v. Montana High School Ass'n*, 280 Mont. 123, 130, 929 P.2d 239, 243 (1996), and *Benefis Healthcare v. Great Falls Clinic,* 2006 MT 254, ¶ 11, 334 Mont. 86, ¶ 11, 146 P.3d 714, ¶ 11.

## DISCUSSION

4

¶8     In seeking a preliminary injunction, the City sought to restrain the County from taking any action to interfere with its jurisdiction until such time as the District Court could resolve whether the resolution unilaterally rescinding the County's participation in the Agreement was void.  However, the court addressed and resolved both the merits of the case and the propriety of a preliminary injunction in its decision.  The City maintains the court erred in reaching and resolving the ultimate issues of the case at the preliminary injunction phase of the case.  We therefore analyze the District Court's disposition of the matter.

¶9     The District Court started its analysis by exploring the legal authority for interlocal agreements.  The District Court observed that substantial constitutional and statutory authority existed allowing cities and counties to enter into interlocal agreements and share or delegate authority—specifically, Article XI, Section 7 of the Constitution, §§ 7-11-104, 76-1-112, 76-1-504, and 76-2-310, MCA.  The court noted, however, that while § 7-11-104, MCA, expressly authorizes creation of interlocal agreements, §§ 76-2-310 and -311, MCA, provide that extending zoning and subdivision regulation jurisdiction to a city is authorized "except in locations where a county has adopted zoning or subdivision regulations" and "until the county board adopts a growth policy pursuant to chapter 1 and accompanying zoning or subdivision resolutions that include the area."  Therefore, the District Court determined, an agreement may facilitate a city's exercise of extra-territorial jurisdiction for only so long as the county has not adopted a growth policy and zoning or subdivision regulations for the area.

¶10 The District Court then turned to the statutes governing preliminary injunctions. The court determined that the City's request for an injunction could not be granted on the following grounds:

- The Agreement was not mutually enforceable. Section 27-19-103(5), MCA, states that an injunction may not be granted to prevent the breach of a contract the performance of which would not be specifically enforced. Section 27-1-414(2), MCA, provides, in relevant part, that neither party to an obligation can be compelled to perform it unless the other party has performed or is compellable specifically to perform everything to which the former is entitled under the same obligation;

- Section 27-19-103(4), MCA, precludes an injunction from being issued to prevent the execution of a public statute by officers of the law for the public benefit; and

- It was unlikely the City would prevail following a trial on the merits as required by § 27-19-201(1), MCA, which provides, in relevant part, that a preliminary injunction may be granted when it appears that the applicant is entitled to the relief demanded.

¶11 The District Court ultimately held that the Agreement was invalid, stating "[t]o the extent enforcement of the [Agreement] would prohibit Flathead County from exercising [the] authority reserved to it by the legislature [pursuant to §§ 76-2-310 and -311, MCA], the [A]greement would be prohibited by law and contrary to the constraints of Article XI, Section 7, of the Constitution and Section 7-11-104, MCA."

¶12 Relying on established precedent, the City initially argues on appeal that the District Court erred when it decided the merits of the underlying case rather than ruling on the specific request before it, i.e., an application for a preliminary injunction. Turning to the court's legal analysis of the underlying merits, the City further argues that the District Court incorrectly determined that the Agreement was not authorized under § 7-11-104, MCA, based on the court's conclusion that the City did not comply with

6

§§ 76-2-310 and -311, MCA. The City points out that Article XI, Section 7 of the Montana Constitution and § 7-11-104, MCA, actually encourage local governments to cooperate in the exercise of any function or responsibility with one or more other local government units. It further asserts that §§ 76-2-310 and -311, MCA, simply describe how a city and county may deal with extra-territorial planning, zoning, and a subdivision review "in the absence of an agreement"; these statutes in no way limit the power of cities or counties to enter into valid joint agreements to cooperatively perform administrative services.

¶13 Moreover, the City claims the District Court's analysis of the mutual capability of specific performance of the Agreement under §§ 27-19-103(5) and 27-1-414, MCA, was raised sua sponte by the District Court *and* was incorrectly reasoned. The City points out that § 27-1-414(2), MCA, does not apply if the party seeking to compel performance has already performed, which, it maintains, it had done and was continuing to do. Furthermore, if, as the District Court theorized, the City declined to perform numerous obligations under the Agreement, the City could certainly be compelled to comply with the Agreement through specific performance.

¶14 The City also notes that § 27-1-412, MCA, listing obligations that cannot be specifically enforced, does not include obligations of the type included in the Agreement. Finally, the City contends the District Court wrongly relied on § 27-19-103(4), MCA, to conclude it could not grant the City's request for an injunction. The City claims that no Montana case interpreting this statute supports the District Court's application of it in this case.

¶15    The County counters that the District Court did *not* reach the merits of the ultimate issue of the case.  It maintains that the court's analysis of §§ 27-19-103 and -201, MCA, was necessary in order to determine whether an injunction could issue in this case.  The County further opines that the District Court was correct in its determination that § 27-19-103(4) and (5), MCA, precluded an injunction under these circumstances, and that § 27-19-201, MCA, did not justify an injunction given that the City failed to establish that it would suffer irreparable harm if its requested injunction was not issued.  The County asserts that the District Court correctly concluded that the Agreement was not capable of mutual specific performance and that injunctions are rarely used to enforce the terms of a contract or to prevent its breach.  The County maintains that the District Court, in reaching these conclusions, did "not manifestly abuse its discretion," and, therefore, should be affirmed.

¶16    As indicated above, we will not review the District Court's ruling under an "abuse of discretion" standard; rather, because a determination of whether an injunction should issue in this case was solely a legal conclusion, we review for correctness.

¶17    We start our analysis with the proposition that it was appropriate for the District Court to preliminarily evaluate whether an injunction was statutorily prohibited under § 27-19-103, MCA.  This being said, however, we conclude that the District Court erred in its application of this statute when it determined that the County could not be prevented from executing a public statute for the public benefit (§ 27-19-103(4), MCA) and that the Agreement could not be specifically enforced (§ 27-19-103(5), MCA).  The error is that both of these determinations were conclusions resolving the ultimate merits

8

of the litigation. Quite simply, by chronologically resolving the merits of the case first and the resulting propriety of the requested preliminary injunction second, the District Court put the cart before the horse.

¶18     We have consistently held that a district court should not resolve the ultimate merits of the case when initially analyzing the propriety of a preliminary injunction. *See e.g. Benefis Healthcare*, ¶ 19 (Findings and conclusions directed toward the resolution of the ultimate issues are properly reserved for trial on the merits and not on preliminary injunction requests.); *Yockey v. Kearns Properties, LLC*, 2005 MT 27, ¶ 18, 326 Mont. 28, ¶ 18, 106 P.3d 1185, ¶ 18 (The limited function of a preliminary injunction is to preserve the status quo and to minimize the harm to all parties pending full trial.) In *Sweet Grass Farms v. Board of County Com'rs.*, 2000 MT 147, 300 Mont. 66, 2 P.3d 825, we instructed that "[i]n determining the merits of a preliminary injunction, 'it is not the province of either the District Court or the Supreme Court on appeal to determine finally matters that may arise upon a trial on the merits.' In granting temporary relief by injunction, courts of equity should in no manner anticipate the ultimate determination of the questions of right involved." *Sweet Grass*, ¶ 38 (internal citation omitted). Here, the court not only anticipated the ultimate determination of the validity of the Agreement, it made the determination outright, and based thereon, denied the injunction. This was error.

¶19     Once we eliminate from consideration the substantive grounds upon which the District Court concluded that the injunction was statutorily prohibited under § 27-19-103, MCA, there remain no statutory prohibitions which would apply at the preliminary

9

injunction phase to prohibit an injunction from being granted. This being so, we now turn to § 27-19-201, MCA, to determine if a preliminary injunction should have been granted in this case.

¶20 The District Court determined that the City was unlikely to prevail at a trial on the merits, and further that it had not established irreparable or great injury such as to justify the issuance of an injunction. Again, it did so after having decided the merits of the proceeding before it. Further, it appears the court considered only § 27-19-201(1) and (2), MCA, and not the remaining subsections of the statute which the City argued were applicable. Notably, in *Sweet Grass*, we held that the district court erred when it failed to consider whether Sweet Grass was entitled to injunctive relief under any of the remaining subsections of the statute other than the one subsection relied upon by the court for rejection of the requested injunction. We said that "the subsections of this statute are disjunctive, 'meaning that findings that satisfy one subsection are sufficient.' Consequently, only one subsection need be met for an injunction to issue." *Sweet Grass*, ¶ 27 (internal citation omitted). Similarly, here, the District Court erred by not taking account of the remaining subsections of the statute urged by the City as persuasive on the propriety of a preliminary injunction.

¶21 Our review of the record reveals that the City argued vehemently that irreparable harm would follow if the County was allowed to unilaterally rescind the Agreement. The City claimed that it had "no plain, speedy and adequate remedy" other than those set forth in its March 2008 Complaint. It advised that

10

numerous applicants currently processing development applications through [the City's] Planning and Building Department, and the public located within the jurisdiction created by the Interlocal Agreement, will be irreparably injured if the Flathead County Commissioners are permitted to unilaterally rescind the Interlocal Agreement. . . . The City of Whitefish has development applications, lakeshore permit applications, and floodplain permit applications pending in the two-mile extraterritorial zone. Finally, the City of Whitefish has pending Flathead County District Court actions, seeking to enforce City land use regulations, affecting property in the two-mile extraterritorial zone. It is necessary that a Temporary Restraining Order issue immediately declaring that the legal effect of [the challenged resolution] is stayed, directing the Flathead County Commissioners to refrain from any actions in furtherance of [the resolution], and prohibiting the Flathead County Commissioners from unilaterally interfering with the City of Whitefish's rights as established by the Interlocal Agreement.

¶22 Additionally, the City argued in its Memorandum in Support of Application for Preliminary Injunction that "[n]o amount of money can rectify the harm that will be done to the City of Whitefish, and its lawful planning, zoning and subdivision operations, by the County's attempted withdrawal from the Interlocal Agreement" and that the City "will suffer irreparable harm" as a consequence of the County's rescinding the Agreement. We conclude the City established the prospect of irreparable harm that could not be remedied by an award of money should the County proceed to act in violation of the Agreement—a conclusion that cannot be refuted by the County, which has conceded it is formulating a plan to re-zone the land in the extra-territorial area. Such a situation precisely meets the criterion of § 27-19-201(2), MCA.

¶23 Furthermore, the City claims its rights under the Agreement are being violated, and that if not enjoined, the County will perform acts which will render any further litigation moot. In this connection, we note the applicability of § 27-19-201(3), MCA, which provides that injunctive relief may issue where the adverse party is doing or

11

threatening to do something in violation of the applicant's rights which might tend to render an eventual judgment ineffectual. Under such circumstances, § 27-19-201(3), MCA, justifies the issuance of an injunction, as we concluded in *Povsha v. City of Billings*, 2007 MT 353, 340 Mont. 346, 174 P.3d 515. In this case, Povsha challenged a zoning change and subdivision approval that would allow the building of an automobile auction house on property adjacent to his residence. Povsha sought injunctive relief in the district court, but his request was denied. He did not appeal the denial of his request for injunctive relief. Subsequently, and before his appeal could be resolved by this Court, the auction house was built. We concluded that because we could no longer grant Povsha effective relief, his appeal was moot. *See also Henesh v. Board of Com'rs*, 2007 MT 335, ¶ 6, 340 Mont. 239, ¶ 6, 173 P.3d 1188, ¶ 6. Notably, we chided the applicants in both *Povsha* and *Henesh* for failing to appeal the district court's denial of the request for injunctive relief or for failing to seek a stay of proceedings until the parties could reach a resolution on the merits. We explained that we could not restore the parties to their original positions once the challenged conduct had occurred. *Povsha*, ¶ 23 and *Henesh*, ¶ 5. In the case at bar, the City has taken the necessary steps to protect the status quo and avoid the danger of mootness until such time as a ruling on the merits may be appropriately obtained.

¶24 Our ruling is further supported by *Billings v. County Water Dist.,* 281 Mont. 219, 935 P.2d 246 (1997). In *Billings*, the City of Billings (Billings) and the County Water District (District) entered into a contract under which the District agreed to purchase water from Billings and in turn sell it to its own customers. The agreement contained a

12

rate increase limitation. Subsequently, Billings increased its water rates beyond the contractual limitation, breaching the rate increase provisions of the agreement between the parties. The District failed to pay the increase and Billings sued to recover the difference between the increased rate and the previous rate that the District had continued to pay. The District responded by alleging that certain statutes allowing a rate increase, which had not yet been enacted at the time the contract was executed, impaired its contract with Billings and were therefore unconstitutional. While the case was pending, Billings initiated another substantial price increase, and the District sought a preliminary injunction to enjoin Billings from enforcing it until such time as the court could rule on the constitutional issues raised by the District. The district court denied the District's application. *Billings*, 281 Mont. at 231, 935 P.2d at 253.

¶25 On appeal, Billings argued that the district court correctly denied the request for injunction because the District was required to prove "beyond a reasonable doubt" that the statutes were unconstitutional. We disagreed, explaining that such a determination must be reserved for a trial on the merits. Observing that there was ample authority for the proposition that a successful applicant for a preliminary injunction need only establish a prima facie case, and need not demonstrate entitlement to a final judgment on the merits (*Knudson v. McDunn*, 271 Mont. 61, 65, 894 P.2d 295, 298 (1995); *Porter v. K&S Partnership*, 192 Mont. 175, 183, 627 P.2d 836, 840 (1981)), the Court concluded that all the District need do in support of its application for a preliminary injunction was to make a prima facie case of a violation of its rights under the contract clauses of the Montana and U. S. Constitutions. *Billings*, 281 Mont. at 227, 935 P.2d at 251. We concluded it

13

had done so and therefore vacated the order denying the injunction and remanded the matter to district court for entry of an injunction until the merits of the case could be resolved. *Billings*, 281 Mont. at 231, 935 P.2d at 253.

¶26     Applying the rationale of *Billings* to the case before us, we conclude that in order to justify the entry of a preliminary injunction, the City of Whitefish was required at a minimum to make a prima facie showing of the existence of a duly executed contract between itself and the County, and a violation of its rights under that contract by virtue of the County's unilateral decision to breach the Agreement by withdrawing from it. This, the City has done.

¶27     For the foregoing reasons, we vacate the District Court's order denying the City's application for preliminary injunction and remand this matter to the District Court for entry of a preliminary injunction preserving the status quo pending a trial on the merits. Reversed and remanded.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice John Warner dissents.

¶28 I dissent. I would follow the directives of § 27-19-201(1), (2), (3), MCA, and give the City what it effectively asked for when it chose not to file a motion for summary judgment but to petition for a preliminary injunction.

¶29 In this case, both the District Court and this Court are presented with a purely legal issue. That is, whether the County may, under the law, unilaterally rescind the interlocal agreement in question.

¶30 The District Court had no choice but to consider the ultimate legal issue involved. Section 27-19-201(1), MCA, requires it to do so, in a preliminary fashion. True, it would have been better if the District Court added "appears" or "preliminary" to its order, rather than say it made a final decision on the law. This would better fit our case law. However, this Court allows itself to be sidetracked into dodging the real issue, and instead meanders through the statutes and cases because of a non-substantive mistake by the District Court and because of the way the City plead its case. Today's remand with instructions to grant a preliminary injunction unnecessarily delays resolution of the single issue presented by these facts to the detriment of both the City of Whitefish and Flathead County.

¶31 The Court expedited this appeal and has literally outdone itself to render a decision in a timely manner. The parties desire a quick resolution of this case for obvious reasons, and have fully briefed the legal issue before us. We are in a position to agree or disagree with the District Court's legal conclusion that apparently the City will not be successful in obtaining the prayed for permanent injunction barring the County from ever

15

rescinding the interlocal agreement without its consent. Therefore, I would consider the matter now, as required by § 27-19-201(1), MCA, and not add to the delay.

¶32 The Court correctly faults the District Court for reaching a decision on the ultimate issue presented before a trial on the merits, but under the circumstances presented here, that mistake is not substantive. There will be no trial on the merits. The City alleged it entered into an interlocal agreement with the County that could not be unilaterally rescinded, and the County breached the agreement by unilaterally rescinding it. The County admits these facts. The City prays for a legal conclusion that the agreement may not be unilaterally rescinded. The County desires a legal conclusion that the agreement is invalid and unenforceable. There is nothing to try. There being no reason to conduct a trial, the District Court was required to consider whether the law allows a city and a county to enter into an interlocal agreement for zoning, which neither can get out of without the consent of the other, until the end of time. The District Court decided, *inter alia*, that the law did not allow such an agreement, and denied the preliminary injunction.

¶33 Now, on appeal, we do not address the merits of the District Court's legal decision, as we should do in a preliminary fashion. We send this case back for a *pro forma* summary judgment motion, entry of judgment, and then another appeal on a purely legal issue already fully briefed here. In my view, we dodge our responsibility by refusing to consider the legal question presented. Of course, any preliminary determination is a forecast to the parties what the ultimate resolution of the case will be.

But, that is the very purpose of § 27-19-201(1), MCA. The City knew this when it sought a preliminary injunction based on admitted facts.

¶34 The City alleged that the County's action in preparing to re-zone the donut causes irreparable harm. However, the denial of a preliminary injunction does no harm to the applicant--the municipal corporation of Whitefish. Only property owners in the donut area, which is in Flathead County, are in danger of some future, unspecified injury if they as individuals have the temerity to take some irrevocable action, or decline to take some action, before the zoning issue now before us is finally decided. It does not appear the County's actions toward re-zoning causes irreparable injury, as the question of whether any new regulations are valid is open during this litigation.[1] A preliminary injunction is not authorized by § 27-19-201(2), MCA.

¶35 Any re-zoning in the donut can and will be undone if it is held that the County breached an enforceable agreement not to re-zone without the City's consent. I agree with the Court, disagree with the District Court, and would conclude that the interlocal agreement can be specifically enforced. If the ultimate decision is in favor of the City, the County cannot re-zone the donut, and the judgment will not be ineffectual. A preliminary injunction is not authorized by § 27-19-201(3), MCA.

---

[1] As the City chose to pray for a preliminary injunction, and not proceed directly to the legal question of whether it is entitled to a permanent injunction, and this Court has decided to order that a preliminary injunction be issued, the questions of whether the City must post a bond to cover any losses sustained by the County, and the amount of such bond, are now open. Section 27-19-306, MCA.

¶36     Sub-sections (4) and (5) of § 27-19-201, MCA, are not applicable.  Thus, this Court should base its decision on sub-section (1), and give these parties what they ask for--a determination of whether it appears the City is entitled to the relief demanded.

¶37     Depending on this Court's view of the single, legal question before us, the District Court should be affirmed or reversed.  I dissent from the Court's decision to require the District Court to issue a preliminary injunction without deciding whether it appears that the City is entitled to the relief demanded.

/S/ JOHN WARNER

Justice Jim Rice, concurring.

¶38     I concur with the Court's decision and write in an effort to promote clarity with regard to our standards of appellate review of preliminary injunctions.  The Opinion indicates that our decision is not made under the manifest abuse of discretion standard because the "determination of whether an injunction should issue in this case was solely a legal conclusion," and thus, we review that conclusion of law for correctness.  Opinion, ¶ 16.  This statement is consistent with standards of review we have often cited in injunction cases:  "In reviewing an order granting or denying a preliminary injunction we determine whether the district court committed a manifest abuse of its discretion. . . . However, where the district court denies injunctive relief based on conclusions of law, no

18

discretion is involved, and we review the conclusions of the law to determine whether they are correct." *Benefis Healthcare*, ¶ 11 (internal quotations and citations omitted).

¶39 I would recommend that parties and the Court attempt to be more precise in the application of these standards of review in injunctive relief cases, so as to not lose the original intent behind them. The foundational approach of appellate review of injunction decisions has been one deferential to the trial court's determination. We noted in *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 11, 319 Mont. 132, ¶ 11, 82 P.3d 912, ¶ 11, the longstanding principle that "[t]he granting or dissolving of an injunction is so largely within the discretion of the lower court, that the supreme court will never disturb its action, unless there has been a manifest abuse of discretion," citing *Craver v. Stapp*, 26 Mont. 314, 67 P. 937 (1902). While it is true that we have also said, as noted above, that "no discretion is involved" when a district court's injunction determination is based on a conclusion of law, we should be careful not to overstate or overapply that standard. Indeed, virtually all injunction determinations will be founded upon conclusions of law; for example, whether a prima facie case is established, or the "likelihood" of irreparable harm or success on the merits is demonstrated are ultimately legal conclusions. However, if all such decisions under the statutes governing injunctions are reviewed under a de novo "correctness" standard, little use would remain for the deferential "manifest abuse of discretion" standard.

¶40 The injunction decisions we have made under the "conclusion of law" review have often involved a district court's interpretation of a substantive statute related to the issuance of the injunction. *See J.M. v. Mont. High Sch. Assn.*, 265 Mont. 230, 875 P.2d

1026 (1994) (grant of injunction was reversed on the ground that the district court's interpretation of a federal special education statute was incorrect); *Hagener v. Wallace*, 2002 MT 109, 309 Mont. 473, 47 P.3d 847, *overruled on other grounds* (grant of injunction affirmed based upon district court's interpretation of fish and wildlife statute). We have sometimes explained that "where, as here, the district court bases its decision to grant such relief *upon its interpretation of a statute*, no discretion is involved and we review the district court's conclusion of law to determine whether it is correct." *Hagener*, ¶ 12 (emphasis added). Such cases help to illustrate that the "conclusion of law" review is not a generic one applicable to all injunction cases simply because conclusions of law were entered regarding the statutory standards for issuance of an injunction. Depending on the case, I believe it is possible for a district court to enter an incorrect conclusion of law on a particular legal principle yet ultimately render an appropriate injunction decision. The question is whether the issuance of the injunction turned on, or was determined by, the legal conclusion. Other courts have more clearly integrated this principle within their jurisprudence. *See Pratte v. NLRB*, 683 F.2d 1038, 1040 (7th Cir. 1982) (de novo review of injunction appropriate "when the availability of preliminary relief turns on interpretation of the law"); *Societe Comptoir de L'industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, Inc.*, 299 F.2d 33, 35-36 (2nd Cir. 1962) ("Although the granting or denial of a preliminary injunction is within the discretion of the court to which it is addressed, where it is plain that the disposition was in substantial measure a result of the lower court's view of the law, which is inextricably

bound up in the controversy, the appellate court can, and should review such conclusions," (citing *Ring v. Spina*, 148 F.2d 647, 650 (2nd Cir. 1945)).

¶41 Here, we do not reverse the District Court's interpretation of any statutes (or the constitutional provisions) related to the substance of the dispute. We explain in ¶ 17 that the District Court's error was in going too far—that its determinations under §§ 27-19-304(4), and 27-19-104(5), MCA, "were conclusions resolving the ultimate merits of the litigation." Opinion, ¶ 17. In so doing, we are not, in my view, reversing conclusions of law as being incorrect, but are holding that such conclusions should not have been entered at this stage of the proceeding. Even if these could technically be considered conclusions of law, they are not the sort of conclusions which should supplant the abuse of discretion standard because they were only part of the District Court's overall consideration of the injunction request. Thus, once we turn back these determinations and reserve them for trial, we are then faced with the issue of whether a preliminary injunction "should have been granted in this case." Opinion, ¶ 19. At this point I agree with the County—the decision to grant or deny an injunction based upon a review of the case is one which should be reviewed for manifest abuse of discretion.

¶42 The District Court reasoned as follows:

> Although the Court acknowledges the lengths to which the City of Whitefish has gone to implement the Interlocal Agreement, with the full cooperation and acquiescence of the County until lately, the Court disagrees with the City's argument that this decision will cause extensive disruption in the functioning of the City and the County and for property owners and developers in the two-mile extra-territorial jurisdiction. Clearly, with or without the IA, the City has the continuing authority under Sections 76-2-310 and -311, MCA, to exercise its jurisdiction over properties in the extra-territorial area until they become subject to a growth

21

plan adopted by the County.  This period of time should ease the transition and diminish the likelihood of irreparable harm to the City and others.

¶43 I agree with the Court in its assessment of the risk of irreparable harm, but would conclude that the District Court manifestly abused its discretion by failing to grant a preliminary injunction.  The City clearly proved the likelihood for irreparable harm.  The Agreement represents the status quo under which the parties have operated for several years and under which extensive actions have been taken by the City to administer its ordinances.  To prevent disruption and harm to the City, its employees and the citizens, that status quo should be maintained pending litigation on the contractual, statutory and constitutional questions at issue.  This error was significant enough to warrant reversal under the deferential manifest abuse of discretion standard of review.


/S/ JIM RICE