JUSTICE RICE,
dissenting.
¶28 I believe that the District Court made significant errors in determining to issue the preliminary injunction and that St. James’s arguments on appeal are not given entirely fair consideration.
¶29 The District Court waded deeply into the merits of this dispute, analyzing the facts and the law. It decided that the Bylaws constituted a contract between the parties (“The Court finds that the elements of a contract are met in this case”). It interpreted the contract (“that procedure [under Article VI, Part C, Section 4(b)] does not constitute peer review. Rather, the procedure for valid ‘peer review investigation’ and ‘peer review recommendation’ is set forth in Article VII”). It then determined that St. James had breached and was continuing to breach the contract (“Based on the record before it, the Court finds the Matovich investigation and resulting recommendation regarding Dr. Cole’s privileges was not peer review.... the Court finds that the Hospital apparently has breached, and continues to breach, the contract between Dr. Cole and the Hospital, as created by the Bylaws.”).
¶30 We have held that courts are not to reach the merits of a dispute when determining whether to issue a preliminary injunction, and admonished the courts not to do so. “It was inappropriate for the District Court to make such conclusions at this stage of the proceedings, and we implore trial courts ... to be careful not to resolve ultimate issues of the case.” Benefis, ¶ 32. Days ago, we were faced with the same error in City of Whitefish v. Board of County Commissioners, 2008 MT 436, 347 Mont. 490, 199 P.3d 201, noting that “the [district] court not only anticipated the ultimate determination of the validity of the Agreement, it made the determination outright... This was error.” ¶ 18. We turned back the improperly entered conclusions in City of Whitefish so that they could be determined at trial. I would do the same thing here. After rolling back the improperly entered conclusions, I would consider whether a preliminary injunction should be issued in this case under the correct analysis. City of Whitefish, ¶ 19.
*77 ¶31 Generally, “[a]n applicant for a preliminary injunction must establish a prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated.” Benefis, ¶ 14. The District Court concluded that Dr. Cole had established a prima facie case, or demonstrated a likelihood of success on the merits, based upon the improperly entered conclusions, addressed above. Beyond that error, however, I believe the proper, preliminary analysis of the Bylaws necessary to determine whether Dr. Cole had a likelihood of success on the merits demonstrates that the District Court’s approach was significantly flawed. I agree with St. James that the District Court looked to the wrong provisions of the Bylaws in determining what procedures would be required following denial of Dr. Cole’s reappointment application-a critical misstep in assessing the likelihood of success on the merits. Looking at the correct provisions raises a serious question over whether a breach of contract warranting an injunction can be established.
¶32 The Bylaws are laid out as follows: Article VI addresses appointment to the Medical Staff generally, Article VII addresses “Actions Affecting Medical Staff Members,” and Article VIII addresses “Hearing and Appeal Procedures.” Article VII, governing actions affecting medical staff, is further broken into parts that address different situations and the procedures applicable thereto: Part A provides the “Procedure for Reappointment,” Part B provides “Procedures for Requesting Increase in Clinical Privileges,” Part C provides “Procedure for Other Questions Involving Medical Staff Members,” Part D addresses “Summary Suspension of Clinical Privileges,” and Part E addresses “Other Actions.” On the face of these provisions, it appears that Part A should govern this matter, as it specifically addresses, as its title indicates, “Procedures for Reappointment.”
¶33 Nonetheless, the District Court concluded that the procedures in Part C of Article VII, which generally govern “Other Questions Involving Medical Staff,” control this matter. However, requiring St. James to follow the procedures in Part C for a reappointment application could obviate the reason for Part A’s existence. Under the District Court’s interpretation, the procedures set forth in Part A could be rendered meaningless, potentially subsumed within the more general provisions of Part C. Part C is written broadly and applies “whenever ... [various St. James authorities] has cause to question” a variety of problems with a medical staff member. It appears from a *78 preliminary review that Part C is intended to apply when an authority has cause to question a doctor’s fitness outside of the reappointment application process. The District Court provided no reason why Part C should be applied instead of Part A, at least with regard to the reappointment issue. The specific provisions therein of the procedure to be followed when “the Board determines to reject the favorable recommendations of the Executive Committee” regarding reappointments seem particularly applicable.
¶34 The District Court got sidetracked in its extensive discussion about whether the actions undertaken by St. James were properly considered “peer review.” However, the initial question which should have been considered was whether peer review was even required under the applicable Bylaws at this stage, which I seriously question. Article VII, Part A, and Article VI, Part C, appear to grant powers to the Board to discuss an appointment issue with the Executive Committee Chairperson, refer the matter to the Committee for further investigation, and consult with third parties about the applicant. I cannot see that Dr. Cole has established a prima facie case that the Board’s actions in hiring Matovich and proceeding exceed the powers granted it under the Bylaws. See Article VI, Part C, Section 4(b). Then, after the Board makes its decision pursuant to these provisions, Dr. Cole can pursue an appeal, and peer review can come into play.
¶35 The Court declines to consider St. James’s likelihood of success arguments. On the one hand, the Court says in ¶ 22 that St. James “has not challenged these findings” of the District Court regarding Dr. Cole’s success on the merits. However, the District Court’s “findings” quoted by the Court in ¶¶ 18 and 20 include conclusions of law about the governing provisions of the Bylaws, which St. James indeed contests. Then, on the other hand, the Court in ¶ 21 dismisses St. James’s arguments because “we do not reach the merits of the ultimate legal questions....” The Court thus reaches its decision without consideration of St. James’s arguments. Somewhere between the conclusion that St. James has not challenged the District Court’s determination on likelihood of success on the merits, and the refusal to consider St. James’s arguments because they go to the merits, St. James’s arguments have completely vanished. Although St. James’s arguments may go too far by touching on ultimate interpretational issues, we should remember that the District Court went even further. St. James argues that the District Court went so far as to harm the Hospital’s case on the merits. I agree with that concern, and I believe we can entertain St. James’s arguments as a proper challenge to the *79 District Court’s analysis of the likelihood of success on the merits, and properly consider them for that purpose.
¶36 The Court concludes in ¶ 26 that Dr. Cole established a basis for issuance of an injunction under § 27-19-201(1), MCA. That section addresses likelihood of success on the merits, and for the reasons expressed above, I would disagree. I also agree with St. James’s arguments regarding the likelihood of irreparable harm. St. James has not contested for purposes of this appeal that it erred by the manner in which it reduced Dr. Cole’s privileges from active staff to consulting staff, and has reinstated Dr. Cole’s privileges pending continuation of the process under the Bylaws. This action preserves the status quo, insuring that Dr. Cole will retain his current privileges during an appeal and peer review as provided by the Bylaws. St. James’s position on Dr. Cole’s status and its explanation that no adverse reports about Dr. Cole will be issued until the appeal process and peer review have been completed obviate any need to issue an injunction. The only reason for issuance of the injunction now is to prevent the possibility “that an erroneous adverse report” may be made. Opinion, ¶ 24. However, it is clear that such a remote possibility does not establish a “likelihood” that Dr. Cole will be irreparably harmed.
¶37 The District Court made substantial errors in its analysis. On their face, the Bylaws contain provisions requiring a different procedure for reappointments than recognized by the District Court, which undermine the claim of likelihood of success on the merits. At present, there is little or no likelihood of irreparable harm. I would conclude that the District Court manifestly abused its discretion and reverse those portions of the injunction order challenged on appeal by St. James.
JUSTICE COTTER joining in the dissenting Opinion of JUSTICE RICE.