FILED

08/20/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 23-0524

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 181

PROTECT THE CLEARWATER,

      Plaintiff and Appellee,

  v.

MONTANA DEPARTMENT OF
ENVIRONMENTAL QUALITY,
and L.H.C, INC.,

      Defendants and Appellants.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-23-776
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant Montana Department of Environmental Quality:

          Jeremiah R. Langston, Sarah Christopherson, Department of
Environmental Quality, Helena, Montana

      For Appellant LHC, Inc.:

          Mark L. Stermitz, Scott D. Hagel, Crowley Fleck PLLP, Missoula,
Montana

      For Appellee:

          Robert Farris-Olsen, David K. W. Wilson, Jr., Morrison Sherwood
Wilson Deola, PLLP, Helena, Montana

          Graham Coppes, Ferguson & Coppes, PLLC, Missoula, Montana

For Amicus Montana Contractors Association:

Brian P. Thompson, Steven T. Wade, Hallee C. Frandsen, Browning, Kalecyzc, Berry & Hoven, PC, Helena, Montana

Submitted on Briefs: June 12, 2024

Decided: August 20, 2024

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Montana Department of Environmental Quality ("DEQ") and LHC, Inc. ("LHC") appeal the Fourth Judicial District Court's preliminary injunction in favor of Protect the Clearwater, halting LHC's dryland opencut mining permit pending final adjudication of Protect the Clearwater's two related legal challenges. We conclude that the District Court improperly applied Title 27's preliminary injunction provisions to Protect the Clearwater's application when it had an available remedy for similar relief in its pending action challenging the agency's environmental review of the same permit. We accordingly reverse the entry of a preliminary injunction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In 2021, the Montana Legislature passed HB 599, which amended the "Opencut Mining Act" codified at Title 82, Chapter 4, Part 4, MCA, to create a new category of opencut mining permits referred to as "dryland" permits, which are defined by statute to mean projects that will not "affect ground water or surface water, including intermittent or perennial streams, or water conveyance facilities" and are in an area where there are fewer than ten "occupied dwelling units . . . within one-half mile of the permit boundary of the operation." Section 82-4-432(1)(b), (c), MCA; 2021 Mont. Laws ch. 545, § 4.

¶3 On March 23, 2023, LHC applied for a dryland opencut mining permit for a project located west of Highway 83 between Seeley Lake and Clearwater Junction. The project is approximately 1,349 feet east of Elbow Lake on the Clearwater River. Gravel from the project is intended to be used for a construction project near Salmon Lake on Highway 83.

3

¶4 On April 10, DEQ issued a deficiency letter to LHC pursuant to § 82-4-432(14)(c), MCA, asking LHC in part to clarify the number of occupied dwelling units within one-half mile of the permit boundary. On April 13, LHC submitted a revised permit application in response to DEQ's deficiency letter. On April 27, DEQ issued its final Environmental Assessment ("EA") and approved LHC's application.

¶5 On May 26, Protect the Clearwater filed a formal administrative appeal with the Board of Environmental Review ("BER") pursuant to § 82-4-427, MCA. On June 26, it filed a complaint in the Fourth Judicial District Court challenging the sufficiency of DEQ's EA under the Montana Environmental Policy Act ("MEPA") pursuant to § 75-1-201, MCA. On June 28, LHC began actively mining and/or preparing for mining by utilizing heavy industrial equipment at the site.

¶6 In response to the activities on the mining site, Protect the Clearwater filed a separate application in the Fourth Judicial District Court on July 11, seeking an ex parte temporary restraining order and preliminary injunction to enjoin the mining of gravel pursuant to the permit. Protect the Clearwater stated in its application, "Pursuant to the authority of the *City of Great Falls v. Forbes*, this Application is being filed without a corresponding Complaint." It requested that the District Court issue a preliminary injunction pursuant to Montana's general preliminary injunction statute found in § 27-19-201, MCA. Its motion raised two primary allegations under the Opencut Mining Act: (1) DEQ failed to confirm the operation was a dryland permit not affecting surface or ground water as defined by § 82-4-432(1)(b)(i), MCA; and (2) DEQ should have subjected

4

the operation to public meeting requirements as provided by § 82-4-432(1)(b)(ii), (8)-(9), MCA, because ten or more occupied dwelling units were within one-half mile of the permit location. It also made several allegations that DEQ's MEPA analysis was inadequate in its consideration of wildlife, air quality impacts, hydrological impacts, and aesthetic impacts.

¶7 On July 17, the District Court granted the restraining order and ordered all parties to appear for a hearing on July 21. At the July 21 hearing, DEQ provided testimony from the author of the EA and an employee of the Department of Natural Resources and Conservation. LHC called its project manager and vice president as witnesses, and Protect the Clearwater presented testimony from two area property owners and from its expert in hydrogeology, who challenged the DEQ's EA and the reliability of the data on which it relied. On August 8, the District Court entered forty-eight pages of findings and conclusions, granted the preliminary injunction, and enjoined LHC "from conducting any and all mining related activities authorized by [the permit]." The court directed that the preliminary injunction would remain in effect "during the pendency of both the administrative matter pending before the Board of Environmental Review . . . and any subsequent petition for judicial review pursuant to § 2-4-701, MCA *et seq*. and/or until the MEPA case currently before this Court reaches a judgement in herein [sic]." LHC and DEQ timely appealed.

**STANDARD OF REVIEW**

¶8 Generally, we review a district court's grant or denial of a preliminary injunction for a manifest abuse of discretion. *Driscoll v. Stapleton*, 2020 MT 247, ¶ 12, 401 Mont.

405, 473 P.3d 386 (citing *Davis v. Westphal*, 2017 MT 276, ¶ 10, 389 Mont. 251, 405 P.3d 73). If the district court's decision was based on legal conclusions, however, we review those conclusions de novo to determine if the district court correctly interpreted the law in ruling on the injunction. *Driscoll*, ¶ 12 (citing *City of Whitefish v. Bd. of Cty. Comm'rs of Flathead Cty.*, 2008 MT 436, ¶ 7, 347 Mont. 490, 199 P.3d 201).

## DISCUSSION

¶9 The court determined that the appropriate standard for evaluating the application for preliminary injunction was that provided in § 27-19-201, MCA, rather than the standard found in MEPA's § 75-1-201, MCA. It explained:

> If Plaintiffs had sought an injunction in their MEPA case, then § 75-1-201, MCA, would certainly apply because they are challenging the issuance of the permit based on a faulty EA. Plaintiffs here, though, seek relief for the Defendants' violation of § 82-4-432, MCA. Specifically, they claim that the issuance of a Dryland Opencut Permit, as opposed to a standard permit was wrongful. This cause of action exists independent from the State's compliance with MEPA. Accordingly, they may proceed under § 27-19-201, MCA, and not § 75-1-201, MCA.

¶10 Under § 27-19-201(1), MCA, revised by the Legislature in 2023, a preliminary injunction may be granted when the applicant establishes four factors: (1) the applicant is likely to succeed on the merits; (2) the applicant is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the applicant's favor; and (4) the order is in the public interest. The court applied those factors as established in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008), noting the Legislature's intent that "the language in subsection (1) mirror the federal

preliminary injunction standard, and that the interpretation and application of subsection (1) closely follow United States supreme court case law." Section 27-19-201(4), MCA.

¶11 Considering the first factor—success on the merits—the court stated, "The 'merits' here are the merits of the BER appeal." It concluded that "the Plaintiffs are likely to succeed on the merits of their claim – that DEQ erred when it issued the dryland permit instead of requiring an application for a standard opencut permit." It concluded for purposes of the preliminary injunction that DEQ had adopted the incorrect interpretation of "affect" as provided in § 82-4-432(1)(b)(i), MCA; that DEQ and LHC did not meet "their burden to establish that the operation will not affect surface water or groundwater"; and that LHC failed to verify the number of occupied dwelling units within one-half mile of the permit boundary. Addressing the second factor, the court found that "Petitioners have demonstrated they are likely to suffer irreparable injury to their health, wildlife, and the natural environment." It ruled that the third factor—the balance of equities—"weighs in favor of preserving the landscape in its natural state while this litigation plays out" and therefore favors an injunction. Finally, the court determined that the public interest weighs in Protect the Clearwater's favor. The court also made an alternative holding that LHC's permit application and DEQ's review processes and its EA were inadequate. The court found that "DEQ's Environmental Assessment and Permit for the project were incomplete, insufficiently analyzed, and not field verified."

¶12 The court reasoned in its conclusions of law:

Plaintiffs are challenging a permit issued pursuant to Title 82, but this matter is not an action challenging "an agency action under [Title 75-1-201, MCA]." Section 75-1-201(5)(a)(i), MCA. Subsection 5(a)(ii) creates a private right of action to challenge a final agency action "alleging failure to comply with or inadequate compliance with a requirement under" MEPA. Section 75-1-201(5)(a)(ii), MCA[.] Similarly, subsection (6)(c)(i) notes that the remedies provided in MEPA "are exclusive" to the extent they challenge an agency decision based on compliance with MEPA. Section 75-1-201(5)(a)(ii), MCA. Put another way, when a party brings an action to challenge the issuance of a permit based on its compliance with MEPA, the party must comply with § 75-1-201, MCA. If the party brings an action challenging a permit for a separate reason, then § 75-1-201, MCA is not exclusive.

¶13 LHC argues that, under the new standards in Title 27, chapter 19, a person may not apply for a preliminary injunction as a standalone proceeding but must file a complaint for relief. It further contends that the District Court erred in applying the general injunction statute found in § 27-19-201, MCA, as authority for issuing the temporary restraining order and preliminary injunction. It asserts that the plain language of MEPA's exclusive remedy section—§ 75-1-206(c)(i), MCA—required the District Court to make findings as set forth in § 75-1-201(6)(c)(ii), MCA, and its failure to examine whether the injunction was appropriate under this statute was reversible error. DEQ adds that the District Court had no authority to prematurely intervene in the administrative process underway before the BER and weigh in on the agency's evaluation of the permit application before that process had concluded.

¶14 Protect the Clearwater responds that under this Court's ruling in *City of Great Falls v. Forbes*, 2011 MT 12, 359 Mont. 140, 247 P.3d 1086, an injunction may be issued upon application and notice without filing a complaint. It asserts further that the "MEPA

8

injunction standards only apply to attempts to void permits *based on an agency's failure to comply with MEPA*." It maintains that because its application for an injunction was not brought pursuant to MEPA, the District Court correctly analyzed whether the injunction was appropriate under Title 27's general injunction provisions.

¶15 We do not resolve the competing arguments over whether a party may seek interim injunctive relief under Title 27 without filing a complaint. Here, Protect the Clearwater *did* file a complaint—in a different action under statutes that provide the precise remedy it seeks here, a preliminary injunction against DEQ's permitting decision.

¶16 When we examine a statute, we begin with its plain language. *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 (citing *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288). If the statutory language is clear and unambiguous, no further interpretation is needed. *Mont. Sports Shooting Ass'n*, ¶ 11 (citing *Letasky*, ¶ 11).

¶17 Section 75-1-201(6)(c)(ii), MCA, provides,

> (ii) Notwithstanding the provisions of 27-19-201 and 27-19-314, a court having considered the pleadings of parties and intervenors opposing a request for a temporary restraining order, preliminary injunction, permanent injunction, or other equitable relief may not enjoin the issuance or effectiveness of a license or permit or a part of a license or permit issued pursuant to Title 75 or Title 82 unless the court specifically finds that the party requesting the relief is more likely than not to prevail on the merits of its complaint given the uncontroverted facts in the record and applicable law and, in the absence of a temporary restraining order, a preliminary injunction, a permanent injunction, or other equitable relief, that the:
>
> (A) party requesting the relief will suffer irreparable harm in the absence of the relief;

9

(B) issuance of the relief is in the public interest. In determining whether the grant of the relief is in the public interest, a court:

    (I)   may not consider the legal nature or character of any party; and

    (II) shall consider the implications of the relief on the local and state economy and make written findings with respect to both.

(C) relief is as narrowly tailored as the facts allow to address both the alleged noncompliance and the irreparable harm the party asking for the relief will suffer. In tailoring the relief, the court shall ensure, to the extent possible, that the project or as much of the project as possible can go forward while also providing the relief to which the applicant has been determined to be entitled.

¶18    Protect the Clearwater asserts that, with the term "notwithstanding," the first clause of the statute "elucidates the [L]egislature's acknowledgment that there are separate and distinct requirements for injunctions *not* brought pursuant to MEPA." The second part of the statute makes plain, however, that unless the court makes certain findings, it "may not enjoin the issuance or effectiveness of a license or permit . . . issued pursuant to Title 75 *or Title 82 . . . .*" Section 75-1-201(6)(c)(ii), MCA (emphasis added). The statute thus contemplates an application for an injunction if the challenged license or permit was issued pursuant to either Title 75 (Parts 1-3 of which constitute MEPA) or Title 82 (Part 4 of which encompasses the Opencut Mining Act). The previous subsection, § 75-1-201(6)(c)(i), MCA, states, "The remedies provided in this section for successful challenges to a decision of the agency or the adequacy of the statement are exclusive." The decision to issue a permit under either Title 75 or Title 82 is certainly "a decision of the agency." The Legislature's inclusion of Title 82 in MEPA's preliminary injunction statute

10

evinces its intent to connect the two statutes together for the purposes of a preliminary injunction.

¶19   We recently affirmed that § 75-1-201(6)(c), MCA, "declares the 'exclusive' remedies for successful challenges to an agency's environmental review." *Water for Flathead's Future, Inc. v. Mont. Dep't of Envtl. Quality*, 2023 MT 86, ¶ 35, 412 Mont. 258, 530 P.3d 790.  In *Water for Flathead's Future*, the district court vacated a permit that Montana Artesian Water Company received from DEQ authorizing its wastewater discharge. *Water for Flathead's Future*, ¶¶ 5, 10.  We held that the court erred when it acknowledged that vacatur was improper under § 75-1-201(6)(c), MCA, but nevertheless vacated the permit at issue based on "inherent authority" it drew from our decision in *Park County Environmental Council v. Montana Department of Environmental Quality*, 2020 MT 303, 402 Mont. 168, 477 P.3d 288.  *Water for Flathead's Future*, ¶¶ 35-36.

¶20   Here, Protect the Clearwater purported to file its application independent of either its underlying administrative appeal or its MEPA complaint, but it effectively alleged violations of both Title 82 and Title 75 in the request for a preliminary injunction.  The District Court determined, "This suit is independent of either the BER appeal or MEPA suit."  The court nonetheless concluded that "[t]he 'merits' here are the merits of the BER appeal."  Although it granted relief under Title 82, the court also granted "the requested relief on the additional grounds that the application, the EA, and review process were inadequate."  The District Court reasoned that Protect the Clearwater's challenge to permit issuance is the gravamen of its case, but its ruling extended to DEQ's MEPA analysis and

rejected the EA on the basis of Protect the Clearwater's expert testimony. Protect the Clearwater's application and the court's preliminary injunction encompassed allegations in the MEPA case, and the relief was expansive. The court enjoined the permit through the duration of not only the BER appeal but also the MEPA case. Protect the Clearwater having filed a complaint under MEPA, its remedy was to be found, if at all, through the exclusive injunctive relief provisions of that Act. It should have filed its preliminary injunction request in the case it already had filed.

¶21 Finally, Protect the Clearwater suggests in the alternative that we nonetheless should affirm on the record because the District Court made findings on each of the factors required in a MEPA injunction analysis. Although some overlap exists between the findings required for a preliminary injunction under Title 27 and under Title 75, the two statutes are not substantively the same, and § 75-1-201(6)(c)(ii)(C), MCA, includes additional requirements that the District Court did not address.

## CONCLUSION

¶22 The District Court erred when it entertained Protect the Clearwater's application for a preliminary injunction as an independent action under Title 27, when the applicant already had filed a separate complaint under Title 75. We vacate the court's order granting the preliminary injunction and remand with instructions to dismiss the application.

/S/ BETH BAKER

12

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE